Benjamin Davidson, Esq. – State Bar No. 241859
E-mail: bdavidson@bendavidsonlaw.com
LAW OFFICES OF BENJAMIN DAVIDSON, P.C.
8383 Wilshire Boulevard, Suite 830
Beverly Hills, CA 90211
Telephone: (323) 713-0010
Facsimile: (323) 488-6888

Attorneys for Plaintiff
NOE VARGAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| NOE VARGAS, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>INSPECTORATE AMERICA CORPORATION, a Delaware Corporation; and DOES 1–20, Inclusive,<br><br>　　　　Defendants. | Case No. 2:17-cv-04972<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR**<br><br>**1. Discrimination on Account of Disability or Medical Condition (FEHA);**<br>**2. Failure to Provide Reasonable Accommodation or Engage in an Interactive Process (FEHA);**<br>**3. Failure to Prevent Discrimination (FEHA);**<br>**4. Wrongful Termination in Violation of Public Policy;**<br>**5. Intentional Infliction of Emotional Distress;**<br>**6. Breach of Contract;**<br>**7. Breach of Implied Employment Contract;**<br>**8. Reporting Time Pay;**<br>**9. Failure to Provide Meal Periods;**<br>**10. Failure to Provide Rest Periods**<br>**11. Waiting Time Penalties; and**<br>**12. Unfair Business Practices (Bus. & Prof. Code §§ 17200, et seq.)**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Noe Vargas, for his complaint against Inspectorate America Corporation and DOES 1 through 20, inclusive, states as follows:

## I.   PARTIES

**A.   Plaintiff.**

1.   Plaintiff Noe Vargas ("PLAINTIFF") is an individual who now and at all relevant times was a resident of the County of Los Angeles, State of California.

**B.   Defendants.**

2.   On information and belief, Defendant Inspectorate America Corporation ("INSPECTORATE") is and at all relevant times was a Delaware Corporation with its principal place of business at 12000 Aerospace Avenue, Houston, Texas 77034..

3.   At all relevant times to this Complaint, PLAINTIFF was employed by INSPECTORATE.  PLAINTIFF was employed at all relevant times based out of INSPECTORATE's offices at headquarters at 22934 Lockness Ave, Torrance, CA 90501, and performed his work inspecting the cargo of ships entering ports in Los Angeles County.

4.   DOES 1 through 20, inclusive, are now, and/or at all times mentioned in this Complaint were, licensed to do business and/or actually doing business in the State of California, and/or were officers, directors, managing agents, or employees of such businesses in California.

5.   The true names and capacities of DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are unknown to PLAINTIFF at the time of filing this Complaint, and PLAINTIFF therefore sues said DEFENDANTS by such fictitious names and pursuant to California Code of Civil Procedure section 414 and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. PLAINTIFF is informed and believes, and based thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to PLAINTIFF as herein alleged.

6.   Defendants INSPECTORATE and DOES 1 through 20, inclusive, are collectively referred to herein as "DEFENDANTS."

7.     PLAINTIFF is informed and believes, and thereon alleges, that at all times mentioned herein, DEFENDANTS were "employers" within the meaning of Government Code section 12926(d), and, as such, were barred from discriminating or retaliating against their employees on account of a protected characteristic, including but not limited to a medical condition, protected activity, or disability (pregnancy), and had a legal duty to refrain from discrimination, harassment and retaliation based on PLAINTIFF'S medical condition, protected activity, or disability (pregnancy).

8.     PLAINTIFF is informed and believes, and thereon alleges, that at all times mentioned herein, DEFENDANTS, and each of them, were "persons" as defined by Labor Code section 18 and other statutes liable for penalties for violating Labor Code statutes. Further, each may be held liable as a "person" or "employer" under or arising out of one or more statutes.

9.     PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS, except as otherwise alleged or contended, are now and/or at all times mentioned in PLAINTIFF's complaint were in some manner legally responsible for the events, happenings, and circumstances alleged in PLAINTIFF's complaint.

10.     PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS, except as otherwise alleged or contended, proximately subjected PLAINTIFF to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

11.     PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS, except as otherwise alleged or contended, are now and/or at all times mentioned in PLAINTIFF's complaint, were the agents, servants and/or employees of some or all other Defendants, and vice-versa, and in doing the things alleged in this Complaint.

12.     PLAINTIFF is informed and believes, and thereon alleges that at all times mentioned, each of DEFENDANTS, except as otherwise alleged or contended, are and have been the partners, joint venturers, alter egos, and/or co-conspirators of each other.  At

all times mentioned, a unity of interest in ownership and other interests between each of the DEFENDANTS existed such that any separateness ceased to exist between them. The exercise of complete dominance and control over the other entities and their properties, rights and interests, rendered such entities as mere shells and instrumentalities of each other DEFENDANT.

13.     On information and belief, DEFENDANTS, and each of them, at all times mentioned in this Complaint approved of, condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this Complaint; and aided and abetted the acts and omissions of each and every one of the other DEFENDANTS, thereby proximately causing the damages alleged in this Complaint.

## II.     SUBJECT MATTER JURISDICTION AND VENUE.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the State of California and citizens of a foreign state or states.

15.     Venue is proper in the Central District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to PLAINTIFF'S claim occurred in the district.

16.     The assignment of this action to the Western Division is proper because a substantial part of the events or omissions which give rise to the claim occurred in Los Angeles County.

## III.     SUMMARY OF FACTS

17.     PLAINTIFF was hired by INSPECTORATE on or about July 2, 2008 as an Inspector responsible for inspecting vessels entering the port. PLAINTIFF performed his job satisfactorily or better at all times.

18.     On or about January 2, 2015, PLAINTIFF was the victim of a violent crime. He sustained an injury to his knee that prevented him from performing his duties as Inspector.  PLAINTIFF was placed on disability.

19. PLAINTIFF was informed that INSPECTORATE`s policy is to guarantee employees' jobs if they return to work due to a disability or medical condition within six months. PLAINTIFF was further informed and understood that his job would be protected through July 2. INSPECTORATE at no time provided any indication, through correspondence or otherwise, that his job had not been protected.

20. By the end of PLAINTIFF's sixth month of recovery his knee felt as though it had healed and he felt ready to return to work. He attempted to see his doctor before July 2 but he was on vacation and there were no available appointments until July 8. INSPECTORATE refused to allow PLAINTIFF to return to work without a doctor`s note.

21. Before July 2, 2015, PLAINTIFF called and texted Office Manager Dave Whitmore letting him know that that he felt fine and expected to be released without restrictions but that he could not get an appointment before July 8. Whitmore said "No worries." PLAINTIFF understood from his conversation with Whitmore that he should report to work in July 8 with a doctor's note.

22. On July 8, 2015, PLAINTIFF returned to work with a doctor`s note releasing him without restrictions. He expected to return to his customary position.

23. He met with West Coast Manager Richard Dimson. Dimson suddenly produced a termination letter dated July 6 – but which PLAINTIFF had not received and which on information and belief had not been sent prior to PLAINTIFF appearing at work – stating that "In accordance with the Termination by Passage of Time Policy, Inspectorate must administratively terminate your employment with the company at this time. This separation will be effective July 6, 2015."

24. PLAINTIFF was surprised by this letter, which he had no knowledge of before this encounter . PLAINTIFF explained that he had been prevented from returning to work without a doctor`s note and that he had specifically informed INSPECTORATE that he could not meet his doctor until July 8.

25. Dimson then said "We feel like you can't do certain things." He also said that the doctor`s note releasing PLAINTIFF to work did not clearly state that I had no

restrictions. He said, "if you give me a doctor`s note that says no restrictions I`ll consider putting you back to work."

26.     PLAINTIFF went back to his doctor and came back the same day with a note clarifying that he had no restrictions. PLAINTIFF told Dimson that he was ready to return to work.   But Dimson did not consider the new note and once again said, "We feel you have restrictions," despite what the doctor's note clearly stated.  He continued to falsely claim that PLAINTIFF was still injured and could not work.

27.     On information and belief, the final decision to terminate was not made on July 6 (as claimed in the letter) but rather on July 8, the day that PLAINTIFF attempted to return to work.  For example, INSPECTORATE's Payroll Authorization Form reflecting PLAINTIFF's termination was initialed by Executive "JC" on July 8, 2015.

28.     At no time did INSPECTORATE enter into an interactive process or discuss any reasonable accommodation in connection with either PLAINTIFF's disability, or what INSPECTORATE perceived to be PLAINTIFF's disability.

29.     He told PLAINTIFF that he would have to reapply if he wanted to work, as though he was a new applicant. PLAINTIFF left the facility and was not permitted to return to work.

30.     Subsequently, when PLAINTIFF attempted to obtain a new position with another company, on information and belief, one or more of INSPECTORATE's managers or agents falsely informed PLAINTIFF's prospective employer that PLAINTIFF was "not good to go because of his knee."

### IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES.

31.     On July 7, 2016, within the time period set forth in Government Code section 12960(d), PLAINTIFF filed a Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH"), alleging that while employed by INSPECTORATE, he was subjected to discrimination, retaliation, denied a good faith interactive process, denied reasonable accommodation, denied reinstatement, and terminated. PLAINTIFF alleged that these adverse actions occurred as a result of his disability,

engagement in protected activity, and medical condition.  The matter was assigned DFEH Number 232637-237350.

32.    Concurrently with the filing of his Complaint of Discrimination, PLAINTIFF requested and was provided an immediate right to sue letter and notice of case closure.  The DFEH Complaint and accompanying documents were duly served on INSPECTORATE at its principal place of business in Houston, Texas.

33.    A true and correct copy of the DFEH Complaint of Discrimination and Right to Sue is attached hereto as Exhibit A.

## V.    CAUSES OF ACTION

### COUNT ONE

### Discrimination on Account of Disability and/or Medical Condition

### (Gov't Code §§ 12940(a))

(Against All DEFENDANTS)

34.    PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.    At all times herein mentioned, the DEFENDANTS, and each of them, employed five or more persons, and Government Code §§ 12900 et seq. were in full force and effect and were binding on DEFENDANTS.

36.    California Government Code section 12940(a) prohibits California employers from discriminating against an employee in compensation or in terms, conditions, or privileges of employment due to that employee's disability and medical condition.  Furthermore, as affirmed by *Moore v. Regents of the Univ. of California* (2016) 248 Cal.App.4th 216, section 12940(a) also prohibits discrimination against employees who employers perceive or regard as disabled.

37.    As set forth herein and above, PLAINTIFF was terminated or, alternatively, denied reinstatement to his position of Inspector, due to his actual or perceived medical condition or disability.

38. By the aforesaid acts and omissions of DEFENDANTS, and each of them, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, substantial losses in earnings, other employment benefits, future earning capacity, and other pecuniary loss not presently ascertained, in an amount according to proof at the time of trial.

39. As a further direct and legal result of the acts and conduct of DEFENDANTS, and each of them, PLAINTIFF has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and/or anxiety, all to PLAINTIFF's damage in an amount according to proof at the time of trial. PLAINTIFF does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

40. PLAINTIFF has been generally damaged in an amount within the jurisdictional limits of this Court.

41. As a direct, foreseeable, and proximate result of DEFENDANTS', and each of their, conduct as alleged herein, DEFENDANTS are liable for PLAINTIFF's reasonable attorney's fees and costs of suit, as authorized under Government Code section 12965(b), the precise amount of which will be proven at trial.

42. DEFENDANTS, and each of them, also acted in willful and conscious disregard of the rights, welfare and safety of PLAINTIFF, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

43. Pursuant to Government Code section 12965(b), as a direct, foreseeable, and proximate result of DEFENDANTS' conduct as alleged herein, PLAINTIFF has incurred and will continue to incur attorney's fees and costs of suit, the precise amount of which will be proven at trial.

**COUNT TWO**

**Failure to Provide Reasonable Accommodation or Engage in an Interactive Process**

**(Gov't Code §§ 12940(m),(n))**

(Against All DEFENDANTS)

44. PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 43, inclusive, as though fully set forth herein.

45. At all times herein mentioned, DEFENDANTS employed five or more persons, and Government Code §§ 12900 et seq. were in full force and effect and were binding on DEFENDANTS.

46. In relevant part, Section 12940(m) provides that it is an unlawful employment practice for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

47. Section 12940(n) provides that it is an unlawful employment practice for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

48. Furthermore, as affirmed by *Moore v. Regents of the Univ. of California* (2016) 248 Cal.App.4th 216, sections 12940(m) and 12940(n) also require the provision of reasonable accommodations and an interactive process in connection with employees who employers perceive or regard as disabled.

49. As described more fully supra, when PLAINTIFF attempted to return to work following a period of disability, as well as during the period of disability, DEFENDANTS refused to discuss any reasonable accommodation or entire into an interactive process in connection with either an actual or perceived disability.

50. DEFENDANTS further failed to provide PLAINTIFF with additional leave as an accommodation where PLAINTIFF was prevented from returning to work on July 2 because his doctor was on vacation and he could not produce a doctor's note.

51. By the aforesaid acts and omissions of DEFENDANTS, and each of them, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, medical expenses, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, for which PLAINTIFF will seek leave of Court to amend when ascertained.

52. By the aforesaid acts and omissions of DEFENDANTS, and each of them, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, medical expenses, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, for which PLAINTIFF will seek leave of Court to amend when ascertained.

53. As a further direct and legal result of the acts and conduct of DEFENDANTS, and each of them, PLAINTIFF has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, pain, discomfort and/or anxiety. PLAINTIFF does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

54. PLAINTIFF has been generally damaged in an amount within the jurisdictional limits of this Court.

55. PLAINTIFF has been generally damaged in an amount within the jurisdictional limits of this Court.

56. As a direct, foreseeable, and proximate result of DEFENDANTS', and each of their, conduct as alleged herein, DEFENDANTS are liable for PLAINTIFF's reasonable attorney's fees and costs of suit, as authorized under Government Code section 12965(b), the precise amount of which will be proven at trial.

57. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS, and each of them, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional,

oppressive, fraudulent and despicable conduct, and acted in willful and conscious disregard of the rights, welfare and safety of PLAINTIFF, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## COUNT THREE

### Failure to Prevent Discrimination Based on Disability or Medical Condition

### (Gov't Code § 12490(k))

(Against All DEFENDANTS)

58.     PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 57, inclusive, as though fully set forth herein.

59.     In relevant part, Government Code section 12490(k), it is an unlawful practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

60.     As set forth herein, DEFENDANTS, and each of them, subjected PLAINTIFF to unlawful discrimination, retaliation, and other unlawful conduct on account of his actual or perceived disability or medical condition.

61.     DEFENDANTS, and each of them, failed to take reasonable steps to prevent the discrimination, retaliation, and other unlawful conduct described herein, in a manner which prejudiced PLAINTIFF.

62.     On information and belief, DEFENDANTS, and each of them, deviated from, violated, or otherwise failed to comply with their own written policies and practices with respect to ensuring equal opportunity to all employees, and responding to and investigating complaints of harassment or discrimination.

63.     On information and belief, DEFENDANTS, and each of them, failed to properly supervise the actions of Office Manager Dave Whitmore and West Coast Manager Richard Dimson, in connection with their wrongful acts and omissions as set forth herein and above.

64. As a result of the aforementioned failures, PLAINTIFF was harmed. The actions of DEFENDANTS, and each of them, were substantial factors in causing PLAINTIFF's harm.

65. As a direct, foreseeable, and proximate result of DEFENDANTS', and each of their, conduct as alleged herein, PLAINTIFF has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial, and which PLAINTIFF is entitled to recover pursuant to Government Code section 12965, et seq.

66. As a further direct and legal result of the acts and conduct of DEFENDANTS, and each of them, PLAINTIFF has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and/or anxiety, all to PLAINTIFF's damage in an amount according to proof at the time of trial.

67. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct as alleged herein, PLAINTIFF has incurred special and general damages, the precise amount of which will be proven at trial.

68. Pursuant to Government Code section 12965(b), as a direct, foreseeable, and proximate result of DEFENDANTS' conduct as alleged herein, PLAINTIFF has incurred and will continue to incur attorney's fees and costs of suit, the precise amount of which will be proven at trial.

**COUNT FOUR**

**Wrongful Termination in Violation of Public Policy**

(Against All DEFENDANTS)

69. PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 68, inclusive, as though fully set forth herein.

70. As set forth herein, PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS, and each of them, wrongfully violated PLAINTIFF's employment agreement and discriminated against PLAINTIFF because of PLAINTIFF's disability or

medical condition, in violation of various fundamental public policies of the State of California and the United States of America. These fundamental public policies are embodied in statutes and/or regulations, including, but not limited to: (1) Government Code §§ 12900 et seq. and 12940 et seq.; (2) Labor Code §§ 200 et seq.; (3) Labor Code §§ 1102.5; (4) Labor Code § 2856; (5) California Business and Professions Code section 17200 et seq.; (6) 42 United States Code §§12101-12213; and (7) 29 United States Code §§ 2601 et seq.

71. For example, Government Code § 12920 asserts the following fundamental public policy:

> It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation.

> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general.

72. Further, the practice of discrimination on account disability or medical condition, or retaliating against an employee who exercises or attempts to exercise his or her rights under the Fair Employment and Housing Act, is against public policy.

73. By the aforesaid acts and omissions of DEFENDANTS, and each of them, including as alleged herein, which resulted in PLAINTIFF's termination, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorney's fees, costs of suit and other pecuniary loss not presently ascertained, for which PLAINTIFF will seek leave of Court to amend when ascertained.

74. As a further direct and legal result of the acts and conduct of DEFENDANTS, and each of them, PLAINTIFF has been caused to and did suffer and

continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, pain, discomfort and anxiety. PLAINTIFF does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

75. PLAINTIFF has been generally damaged in an amount within the jurisdictional limits of this Court.

76. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS, and each of them, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive, fraudulent and despicable conduct, and acted in willful and conscious disregard of the rights, welfare and safety of PLAINTIFF, thereby justifying punitive and exemplary damages to be determined at trial.

77. As a result of the conduct of the DEFENDANTS, and each of them, PLAINTIFF is entitled to reasonable attorneys' fees and costs of suit to the extent provided by law.

## COUNT FIVE

### Intentional Infliction Of Emotional Distress

(Against All DEFENDANTS)

78. PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 77, inclusive, as though fully set forth herein.

79. The conduct of DEFENDANTS, and each of them, as set forth above, was so extreme and outrageous that it exceeded the boundaries of a decent society and lies outside of the compensation bargain.

80. The conduct of DEFENDANTS, and each of them, did not merely constitute personnel management activity or decisions.

81. The conduct of DEFENDANTS, and each of them, constituted a pattern of continuing violations or a course of conduct such that conduct occurring prior to the

statutory period also contributed to PLAINTIFF's emotional distress and is not barred by the statute of limitations. (*Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338.)

82.     Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing severe emotional distress.

83.     As a proximate result of the wrongful conduct of DEFENDANTS, and each of them, PLAINTIFF has suffered and continues to suffer severe and continuous humiliation, emotional distress, and mental pain and anguish, all to PLAINTIFF's damage in an amount according to proof at the time of trial.

84.     In doing the acts herein alleged, DEFENDANTS acted with oppression, fraud, malice, and in conscious disregard of the rights of PLAINTIFF, and PLAINTIFF is therefore entitled to punitive damages according to proof at the time of trial.

### COUNT SIX

### Breach of Contract

(Against All DEFENDANTS)

85.     PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 84, inclusive, as though fully set forth herein.

86.     In or around January 2015, when he suffered a knee injury, PLAINTIFF was informed that per DEFENDANTS' policy, employees who suffer a disability or medical condition are guaranteed their jobs for a period of six months.  PLAINTIFF was informed that his six-month period would expire on July 2.

87.     However, when PLAINTIFF advised Office Manager Dave Whitmore that he was able to return to work on July 2, 2015, Whitmore refused to permit him to return unless he produced a doctor's note clearing him to return.  PLAINTIFF advised Whitmore that he could not obtain a doctor's note until July 8, 2015 because his doctor was on vacation.  Whitmore said "No worries."

88.     However, when PLAINTIFF returned to work on July 8, 2015, DEFENDANTS provided him a letter dated July 6 (but which PLAINTIFF had not seen

previously and which on information and belief had not yet been sent out out) stating that he had been administratively terminated for failure to comply with the Company's "Termination by Passage of Time Policy."

89. PLAINTIFF at all times performed the terms of his agreement with DEFENDANTS in the manner specified by the agreement.

90. DEFENDANTS, and each of them, failed and refused to comply with the terms of their agreement with PLAINTIFF. The breach on or about 7/8/2015 caused significant harm to PLAINTIFF. DEFENDANTS' failure and refusal to perform their obligations under the contract directly damaged PLAINTIFF through the loss of income in an amount according to proof.

91. WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as more fully set forth below.

**COUNT SEVEN**

**Breach of Implied Employment Contract**

(Against All DEFENDANTS)

92. PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 91, inclusive, as though fully set forth herein.

93. On or about July 2, 2008, PLAINTIFF entered into an employment relationship with DEFENDANTS, as described above and as modified from time to time throughout PLAINTIFF's employment with DEFENDANTS, pursuant to which PLAINTIFF agreed to work for DEFENDANTS and for which DEFENDANTS agreed to pay PLAINTIFF's compensation. During the entire course of PLAINTIFF's employment with DEFENDANTS, there existed an implied-in-fact employment contract between PLAINTIFF and DEFENDANTS, which at the time of PLAINTIFF's discharge included, but was not limited to, the following terms and conditions:

a. PLAINTIFF would be able to continue PLAINTIFF's employment with DEFENDANTS indefinitely so long as PLAINTIFF carried out PLAINTIFF's duties in a proper and competent manner;

b.      DEFENDANTS would not subject PLAINTIFF to or permit PLAINTIFF to be subjected to harassment, discrimination, or retaliation on account of any protected characteristic, including PLAINTIFF's medical condition or disability;

c.      DEFENDANTS would provide PLAINTIFF a reasonable accommodation and engage in an interactive process in connection with PLAINTIFF's actual or perceived disability or medical condition;

d.      DEFENDANTS would comply with all California laws and regulations affecting the wages and hours worked of employees, including the provision of meal and rest periods, the payment of reporting time pay, and the payment of waiting time penalties; and

e.      DEFENDANTS would return PLAINTIFF to PLAINTIFF's previous position as Inspector at PLAINTIFF's prior wages after PLAINTIFF returned from disability leave.

94.     This total employment agreement was evidenced by various written documents, oral representations to PLAINTIFF by DEFENDANTS' agents and employees, and the parties' entire course of conduct.

95.     PLAINTIFF undertook and continued employment and duly performed all of the conditions of PLAINTIFF's employment contract.  PLAINTIFF at all times was ready, willing and able to perform all of the conditions of PLAINTIFF's employment contract.

96.     Despite the representations made to PLAINTIFF by DEFENDANTS and the reliance that each placed upon them, DEFENDANTS failed to carry out their responsibilities under the terms of their employment agreements, without good cause and in violation of the laws of the State of California, as described more fully herein.

97.     DEFENDANTS' actions constituted a breach of the total employment agreement.

98.     As a proximate result of DEFENDANTS' breach of the total employment agreement, PLAINTIFF has suffered and continues to suffer substantial losses in earnings, bonuses, and other employment benefits which PLAINTIFF would have received had

DEFENDANTS not breached said agreements, all to PLAINTIFF's damage in amounts according to proof.

99.     DEFENDANTS' breach of the implied employment contract has resulted in substantial earnings and benefits impairment currently and extending into the future.  As a result, PLAINTIFF has suffered, and continues to suffer, losses in income, earnings, benefits and other consequential damage in a sum to be shown according to proof.

100.    WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

## COUNT EIGHT

### Reporting Time Pay (IWC Wage Order)

(Against All DEFENDANTS)

101.    PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 100, inclusive, as though fully set forth herein.

102.    Pursuant to Section 5(A) of the lWC Wage Orders, "Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or  scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." (*See also Price v. Starbucks Corp.* (2011) 192 Cal. App. 4th 1136 [two hours reporting time pay required for day on which plaintiff reported to work and was told he was being terminated, even though the meeting lasted only forty-five seconds].)

103.    PLAINTIFF understood from his communications with Office Manager Dave Whitmore, as described above, that he should report to work in July 8, 2015 with a doctor's note releasing him from disability.

104.    PLAINTIFF in fact showed up prepared to work on July 8, 2015 with a doctor's release.

105.    Instead of being permitted to work, PLAINTIFF was informed by West Coast Manager Richard Dimson that he was being terminated.  However, even at that point

PLAINTIFF was made to believe that he could continue working.  Dimson stated that "if you give me a doctor's note that says no restrictions I'll consider putting you back to work."  On that basis, PLAINTIFF went back to his doctor and came back the same day with a note clarifying that he had no restrictions.  But Dimson did not consider the new note and once again said "We feel you have restrictions."  PLAINTIFF was sent home.

106.   DEFENDANTS failed to compensate PLAINTIFF for reporting to work – *twice* – on July 8, 2015.

107.   DEFENDANTS' actions are in violation of the IWC Wage Orders, as affirmed in the holding of *Price v. Starbucks Corp.*

108.   PLAINTIFF is therefore entitled to damages in an amount according to proof.

109.   PLAINTIFF is also entitled to an award of costs and reasonable attorneys' fees.

## COUNT NINE

**Failure to Provide Meal Periods and/or One Hour's Compensation in Lieu Thereof**

**(Labor Code §§ 226.7 & 512, IWC Wage Order 4-2001 §§ 11, 20)**

(Against All DEFENDANTS)

110.   PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 109, inclusive, as though fully set forth herein.

111.   At all relevant time periods, DEFENDANTS, and each of them, were an "employer" and/or "other person acting on behalf of an employer" pursuant to Labor Code section 558(a).

112.   At all relevant times, Labor Code sections 226.7(a) and 512(a), 8 Cal. Code Reg. section 11040, and IWC Wage Order No. 4-2001 § 11(A) required that DEFENDANTS provide employees full and uninterrupted off-duty meal periods, including a first meal period of not less than (30) thirty minutes before working more than (5) five hours.

113. Labor Code section 516 provides that the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods for any workers in California consistent with the health and welfare of those workers.

114. At all relevant times, Labor Code sections 226.7(b), 8 Cal. Code Reg. section 11040, and IWC Wage Order No. 4-2001 § 11(B) required that if an employer failed to provide an uninterrupted duty-free meal period in accordance with the above requirements, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

115. DEFENDANTS, and each of them, failed to provide PLAINTIFF with an uninterrupted duty-free meal period of not less than (30) thirty minutes for shifts of longer than (5) hours. As such, PLAINTIFF was compelled by DEFENDANTS to work through his meal periods or was provided with insufficient meal periods

116. In addition, PLAINTIFF performed work duties during meal periods, for which PLAINTIFF was not compensated, and/or was regularly not provided with proper or timely meal periods.

117. PLAINTIFF did not willfully waive his right to take duty-free meal periods through mutual written consent with DEFENDANTS, nor did PLAINTIFF take any other action that could have been construed as a lawful waiver of the right to meal periods.

118. Because of DEFENDANTS' failure to provide full and uninterrupted off-duty meal periods, DEFENDANTS, and each of them, are liable to PLAINTIFF for one hour of additional pay at the regular rate of compensation for each workday in which a full and uninterrupted off-duty meal period was not provided during the applicable liability period. (Lab. Code § 226.7(b), 8 Cal. Code Regs. § 11040, IWC Wage Order No. 4-2001 § 11(B).

119. However, DEFENDANTS did not timely and properly compensate PLAINTIFF for each workday that a full and uninterrupted off-duty meal period was not provided, including failing to pay PLAINTIFF outright and/or failing to pay PLAINTIFF an hour of premium pay at PLAINTIFF's regular rate of compensation.

120.    By failing to compensate PLAINTIFF for non-provided meal periods, as alleged above, DEFENDANTS knowingly, willfully and deliberately violated Labor Code sections 226.7 and 512, 8 Cal. Code Reg. section 11040, and Wage Order No. 4-2001.

121.    As a result of DEFENDANTS', and each of their, unlawful acts, PLAINTIFF has been deprived of compensation for missed meal periods and/or improperly provided meal periods in amounts to be determined at trial, and DEFENDANTS must make restitution to PLAINTIFF for all pay owed, for all premium pay owed, plus interest, attorneys' fees and costs, and civil penalties, pursuant to Labor Code sections 218.6, 226.7(b), and 558, 8 Cal. Code Reg. section 11040, and IWC Wage Order No. 4-2001 §§ 11(B) and 20.

122.    Accordingly, PLAINTIFF respectfully requests that the Court award judgment and relief in PLAINTIFF's favor as described herein.

**COUNT TEN**

**Failure to Provide Rest Periods and/or One Hour's Compensation in Lieu Thereof**

**(Labor Code §§ 226.7 & 512, IWC Wage Order 4-2001 §§ 11, 20)**

(Against All DEFENDANTS)

123.    PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 122, inclusive, as though fully set forth herein.

124.    Labor Code section 226.7(a) states: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

125.    Labor Code section 516 provides that the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods for any workers in California consistent with the health and welfare of those workers.

126.    Section 12(A) of the IWC Wage Order(s) states: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall bee based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours

or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there 4 shall be no deduction from wages."

127. Section 12(B) of the IWC Wage Order(s) states: "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

128. PLAINTIFF consistently worked over four (4) hours per shift and therefore was entitled to a rest period of not less than ten (10) minutes prior to exceeding four (4) hours of employment.

129. DEFENDANTS failed to authorize and permit the required rest periods established by Labor Code §§226.7 and 516 and Section 12 of the IWC Wage Order(s).

130. Pursuant to Section 12(B) of the IWC Wage Order(s) and Labor Code §226.7(b) which states "if an employer fails to provide an employee a meal or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided," PLAINTIFF is entitled to damages in an amount equal to one (1) additional hour of pay at his regular rate of compensation for each work day that the rest period was not provided.

131. Pursuant to Labor Code section 218.6 and Civil Code section 3287, PLAINTIFF seeks recovery of pre-judgment interest on all amounts recovered herein.

**COUNT ELEVEN**

**Waiting Time Penalties (Labor Code §§ 201-203)**

(Against All DEFENDANTS)

132. PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 131, inclusive, as though fully set forth herein.

133.   Labor Code section 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue at the same rate, for up to thirty (30) days from the due date thereof, until paid or until an action therefore is commenced.

134.   As alleged herein and above, DEFENDANTS failed to pay PLAINTIFF all wages owed at the time of PLAINTIFF's termination on or about July 8, 2015.

135.   For example, DEFENDANTS failed to pay PLAINTIFF overtime, meal period premiums, accrued and improperly applied vacation pay, and earned but unpaid bonuses or commissions.

136.   DEFENDANTS' failure to pay wages to PLAINTIFF was willful because DEFENDANTS knew or should have known wages were due PLAINTIFF and failed to pay those wages.

137.   Thus, PLAINTIFF is entitled to recovery pursuant to Labor Code section 203, in the amount of PLAINTIFF's daily wage multiplied by thirty (30) days.

138.   Pursuant to Civil Code section 3287, PLAINTIFF also seeks recovery of pre-judgment interest on all amounts recovered herein.

139.   Also, pursuant to Labor Code section 218.5, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

## COUNT TWELVE

### Unfair Business Practices (Bus. & Prof. Code §§ 17200, et seq.)

(Against All DEFENDANTS)

140.   PLAINTIFF re-alleges and incorporates herein by reference paragraphs 1 through 139, inclusive, as though fully set forth herein.

141.   Business & Professions Code section 17200 provides in pertinent part that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act . . . ."

COMPLAINT FOR DAMAGES
2:17-cv-04972

142. DEFENDANTS, and each of them, have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by Business & Profession Code section 17200, including those set forth in the preceding and foregoing paragraphs of the Complaint, thereby depriving PLAINTIFF of the minimum working standards and conditions due to PLAINTIFF under California labor laws and the IWC Wage Order(s), as specifically described herein.

143. DEFENDANTS', and each of their, use of such practices constitutes an unfair business practice, unfair competition and provides an unfair advantage over each of DEFENDANTS' competitors.

144. PLAINTIFF has suffered injuries in fact and have lost money or property as a result of such unfair competition.

145. PLAINTIFF seeks full restitution from DEFENDANTS, and each of them, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by PLAINTIFF by means of the unfair practices complained of herein.

146. Further, if DEFENDANTS are not enjoined from the conduct set forth above, DEFENDANTS will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs.  Therefore, PLAINTIFF requests that the Court issue a preliminary and permanent injunction prohibiting DEFENDANTS from engaging in the conduct complained of herein.

147. DEFENDANTS', and each of their, conduct in directly violating the above-mentioned state laws, constitutes and was intended to constitute unfair competition, unfair compensation, and unlawful and unfair acts and practices within the meaning of the Unfair Competition Law.

148. Through DEFENDANTS' wrongful and unlawful acts, DEFENDANTS have acted contrary to the public policy of this State.

149. As a result of their unlawful, unfair, and/or fraudulent acts, DEFENDANTS have reaped and continue to reap unfair benefits and illegal profits at the expense of PLAINTIFF.

150.    Therefore, under the provisions of the Unfair Competition Law, the Labor Code, and IWC Wage Order No. 7, DEFENDANTS should be enjoined from this activity and should provide restitution to PLAINTIFF the wrongfully withheld wages and other benefits pursuant to Business and Professions Code sections 17203, and/or specific remedies available under 17202, in a sum according to proof for the 4-year period preceding the filing of the complaint up to and including the present.

151.    Accordingly, PLAINTIFF respectfully requests that the Court award judgment and relief in PLAINTIFF's favor as described herein.

## VI.    PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays for judgment against DEFENDANTS, and each of them, as follows, in addition to any remedies stated within the body of any cause of action herein:

1.    For costs of suit incurred herein;

2.    For compensatory, special and general damages pursuant to Civil Code section 3333 and/or other applicable statute or rule of law;

3.    For past and future lost income and benefits;

4.    For emotional distress and personal and physical or mental injury and sickness;

5.    For reliance damages;

6.    For punitive or exemplary damages, pursuant to Civil Code section 3294, the holding in *Slaughter v. Legal Process & Courier Service*, 162 Cal.App.3d 1236, and/or other statute or rule of law;

7.    For unpaid wages, overtime, unpaid compensatory pay for missed, late or inadequate meal or rest periods; damages for failure to provide accurate wage statements; liquidated damages; and penalties for Labor Code violations and violations of the applicable IWC Wage Order, under Labor Code §§ 203, 218.6, 226(e), 226.7(b), 558, 1174.5, 1194(a), 1194.2, 2698, et seq., Civil Code § 3287, and/or as permitted by law;

8.      For injunctive relief pursuant to the Labor Code and/or Business and Professions Code section 17200, et seq., and/or other statutory or legal authority;

9.      For restitution of wages, premiums, interest, and/or penalties owed to PLAINTIFF, and/or other employees, pursuant to the Labor Code and/or Business and Professions Code section 17200, et seq., and/or other statutory or legal authority; and

10.     For prejudgment and post-judgment interest as available by law;

11.     For reasonable attorney fees and costs, including but not limited to as provided under the Fair Employment and Housing Act, including as provided under California Government Code section 12965(b), and/or pursuant to the Labor Code for unpaid wages; and

12.     For such other and further relief as this Court may deem just and proper.

## VII.   DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands trial of PLAINTIFF's claims by jury to the extent authorized by law.

Dated: July 6, 2017                          LAW OFFICES OF BENJAMIN DAVIDSON, P.C.


                                             By: /s/  Benjamin Davidson
                                                 BENJAMIN DAVIDSON, ESQ.
                                                 Attorneys for Plaintiff
                                                 NOE VARGAS